IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
CENTRAL DIVISION

JASON HINTON PLAINTIFF

V. Case No. 4:25-CV-00984-JM-BBM

FRANK BISIGNANO, Commissioner,
Social Security Administration DEFENDANT

**RECOMMENDED DISPOSITION**

This Recommended Disposition ("Recommendation") has been sent to United States District Judge James M. Moody Jr. Either party may file written objections to this Recommendation. Those objections should be specific and should include the factual and/or legal basis for the objection. To be considered, objections must be received in the office of the Court Clerk within 14 days. If no objections are filed, Judge Moody can adopt this Recommendation without independently reviewing the record. By not objecting, parties may also waive the right to appeal questions of fact.

## I. INTRODUCTION

Jason Hinton applied for Title II disability and disability insurance benefits in December 2023, alleging disability beginning October 15, 2017. (Tr. at 28, 209). His claim was denied both initially and upon reconsideration, and he requested a hearing before an Administrative Law Judge ("ALJ"). *Id*. at 127, 138, 145. At the telephone hearing on January 8, 2025, *id*. at 45–76, Hinton amended his alleged onset date of disability to August 22, 2019. *Id*. at 48.[1] On March 17, 2025, the ALJ concluded that Hinton was not disabled.

---

[1] Hinton previously filed a Title II application and a Title XVI application for supplemental security

*Id*. at 28–39. Hinton requested review, and on April 17, 2025, the Appeals Council found there was no basis for reviewing the ALJ's decision. *Id*. at 12. The ALJ's decision now stands as the final decision of the Commissioner, and Hinton requests judicial review. For the reasons set forth below, the Court recommends that the decision of the Commissioner be reversed and that this case be remanded for further proceedings.

## II. THE COMMISSIONER'S DECISION

At step one of the sequential five-step analysis,[2] the ALJ found that Hinton had not engaged in substantial gainful activity from his alleged onset date of August 22, 2019, through his date last insured of December 31, 2022. (Tr. at 31). At step two, the ALJ found that Hinton had the following severe impairments: degenerative disc disease; degenerative joint disease; immune deficiency; depression; anxiety; posttraumatic stress disorder ("PTSD"); and substance abuse disorder. *Id*. After finding at step three that none of Hinton's impairments or combination of impairments met or medically equaled a listed impairment, *id*. at 32–33, the ALJ determined that Hinton had the residual functional capacity ("RFC") to perform light work, except he: could occasionally climb stairs and ambulate on unlevel surfaces; was limited to simple, routine, and repetitive tasks; was limited to simple, direct,

---

income on October 9, 2017. (Tr. at 28). Those applications were denied, and the decision of the Commissioner became final on August 21, 2019. *Id*. Because res judicata bars consideration of Hinton's claims for the prior period, he moved to amend his alleged onset date of disability. *Id*. at 28, 48.

[2] Using a five-step sequence, the ALJ determines: (1) whether the claimant was engaged in substantial gainful activity; (2) if not, whether the claimant had a severe impairment; (3) if so, whether the impairment (or combination of impairments) met or equaled a listed impairment; (4) if not, whether the impairment (or combination of impairments) prevented the claimant from performing past relevant work; and (5) if so, whether the impairment (or combination of impairments) prevented the claimant from performing any other jobs available in significant numbers in the national economy. 20 C.F.R. § 404.1520(a)–(g).

and concrete supervision; and could occasionally interact with coworkers and supervisors but never with the public. *Id*. at 33. At step four, the ALJ found that Hinton had no past relevant work but that he could perform other jobs, including housekeeper, routing clerk, and collator, that exist in significant numbers in the national economy. *Id*. at 37–38. Consequently, the ALJ concluded that Hinton was not disabled. *Id*. at 39.

## III. DISCUSSION

### A. Standard of Review

"In reviewing the ALJ's decision," the Court "examine[s] whether it is supported by substantial evidence on the record as a whole and whether the ALJ made any legal errors." *Miller v. Colvin*, 784 F.3d 472, 477 (8th Cir. 2015); *see also* 42 U.S.C. § 405(g). "Substantial evidence is that which a 'reasonable mind might accept as adequate to support a conclusion,' whereas substantial evidence on the record as a whole entails 'a more scrutinizing analysis.'" *Reed v. Barnhart*, 399 F.3d 917, 920 (8th Cir. 2005) (citations omitted). "Our review 'is more than an examination of the record for the existence of substantial evidence in support of the Commissioner's decision . . . . [W]e also take into account whatever in the record fairly detracts from that decision.'" *Gann v. Berryhill*, 864 F.3d 947, 950–51 (8th Cir. 2017) (citation omitted). "Reversal is not warranted, however, 'merely because substantial evidence would have supported an opposite decision.'" *Reed*, 399 F.3d at 920 (citation omitted).

In clarifying the "substantial evidence" standard applicable to review of administrative decisions, the Supreme Court has explained: "And whatever the meaning of 'substantial' in other contexts, the threshold for such evidentiary sufficiency is not high.

Substantial evidence . . . is 'more than a mere scintilla.'" *Biestek v. Berryhill*, 587 U.S. 97, 103 (2019) (quoting *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)). "It means—and means only—'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Id*. (citation omitted).

**B. Hinton's Arguments on Appeal**

Hinton asserts that the ALJ (1) erroneously substituted his own lay opinion for that of medical experts when assessing the RFC; (2) mischaracterized and ignored significant probative evidence, issuing a materially inconsistent decision; and (3) failed to evaluate adequately the medical opinion of psychologist James Moneypenny, Ph.D. (Doc. 9 at 7–25). The Court is persuaded by Hinton's third argument and recommends reversal of the Commissioner's decision.[3]

**1. Hinton's Treatment History with Dr. Moneypenny**

In January 1994, Hinton, a veteran, was the victim of repeated acts of military sexual trauma while in bootcamp.[4] (Tr. at 470, 1195, 1277–78, 1777–79, 1785–89). In April 2017, Hinton began treatment with Dr. Moneypenny for chronic PTSD. *Id*. at 1783. Rather than provide session-by-session treatment records, Dr. Moneypenny offered periodic progress

[3] On remand, an ALJ will reassess all the evidence to determine Hinton's RFC; thus, the Court need not address Hinton's remaining arguments. *See, e.g.*, *Martin v. Bisignano*, No. 4:24-CV-000978-LPR-BBM, 2025 WL 3243457, *6 (E.D. Ark. Nov. 20, 2025), *adopted by* 2026 WL 130360 (Jan. 16, 2026); *McCann v. Soc. Sec. Admin., Comm'r*, No. 4:24-CV-01078-BSM-ERE, 2025 WL 1088835, *4 (E.D. Ark. Apr. 11, 2025), *adopted by* 2025 WL 1372810, *1 (May 12, 2025).

[4] The United States Department of Veterans Affairs has found Hinton 100% disabled, and he receives benefits. (Tr. at 55, 1470–73).

reports of Hinton's treatment.[5] *Id*. at 1787–89. For instance, in March 2018, Dr. Moneypenny described Hinton's symptoms as "chronic, severe and complex," including "chronic sleep disturbance and nightmares recounting his trauma . . . paranoid fears and panic attacks[,]" and a preoccupation with "intrusive and disturbing memories and thoughts." *Id*. at 36, 1785. Dr. Moneypenny concluded that:

> While the prognosis for improvement and symptom remission is favorable in the long term, I endorsed his decision to cease his employment at the VA and at this point I do not regard him as capable of adapting or adjusting in any other competitive employment setting. Social withdrawal is, at this point, the only means by which he can avoid the fears and anxieties that would be otherwise overwhelming and which effectively preclude his capacity to work. The prospect of him returning to gainful employment at some point cannot be ruled out; but I do not see this as likely in the immediate future.

*Id*. at 1786.

On October 2, 2018, Dr. Moneypenny wrote that Hinton "has a diagnosis of PTSD, with prominent symptoms of anxiety, defensive avoidance, social withdrawal, paranoid ideation, intrusive and disturbing thought processes and chronic sleep disturbance." *Id*. at 1806. Hinton "struggles to attend his job . . . suffers acute panic attacks . . . [and] [h]is thinking is often preoccupied with fears of being assaulted." *Id*. From a December 2019 document labeled, "Addendum to Record of Treatment" and subtitled, "Capability to work assessment," Dr. Moneypenny wrote that "Factors affecting Jason's employability have little to do with a lack of capacity to understand or learn skills or his general knowledge.

[5] In a July 2, 2019 letter, Dr. Moneypenny stated that it was "impractical and unproductive to reproduce [his] handwritten notes taken during a psychotherapy session." (Tr. at 1787). He noted that his "treatment notes beyond the first couple of sessions rarely include more than date of service and brief comments on symptoms reported and recommendations made." *Id*. Examples of Dr. Moneypenny's handwritten treatment notes from June 11, 2020, through December 10, 2020, are part of the record. *Id*. at 1801–03.

Rather, the factors that impact Jason's capacity to adapt and adjust to the demands of a routine work setting have to do with his PTSD symptoms. He is generally paranoid about other people and anticipates negative interactions and potential threats from others." *Id*. at 1777–78.

In a letter dated January 23, 2021, Dr. Moneypenny noted that, since COVID, Hinton's "social contact is limited to his doctors visits, with myself and providers at the VA, and his mother. He previously had attended his church, had participated in their choir and was involved in the churches food bank. He was able to perform his responsibilities largely alone and without the contact with other parishioners." *Id*. at 1804. Dr. Moneypenny noted that, "I do not regard his condition as consistent with any capacity to carry out routine, competitive workplace activities because of his symptoms and condition." *Id*.

In a progress report on January 23, 2024, Dr. Moneypenny wrote that:

> Mr. Hinton has continued in therapy. His symptoms are stable and unchanged. He continues to be acutely anxious and unable to adapt or adjust to public/social settings.
>
> He continues to harbor fears relative to prior trauma and prior legal involvements. He attends therapy 1-2x/month. He has worked as a volunteer at a church based food pantry, one day/week, but left there for a time because of fears/suspicions regarding a co-worker. He returned to that job at times when there were no other co-workers. He continues to sing in the church choir.
>
> He has moved his residence secondary to fears about other residents in the former neighborhood where he lived. He is unable to tolerate the presence of others because of irrational fears of harm coming to him.

*Id*. at 1404.

### 2. ALJ's Evaluation of Dr. Moneypenny's Medical Opinion

The ALJ reviewed the records provided from Dr. Moneypenny and found his opinion unpersuasive. (Tr. at 36). Specifically, as to supportability and consistency, the ALJ concluded as follows:

> Dr. Moneypenny noted that his treatment notes, beyond the first couple of sessions, rarely include more than date of service and brief comment on symptoms, information which is meaningful to him, but it is not particularly compelling or helpful to an outsider, such as the undersigned, tasked with understanding the claimant's functioning during the relevant time period. The actual treatment records, which are apparently not available,[[6]] would be more persuasive, versus a recreation of the records, recorded at a later date, and issued as a medical opinion. For this reason, the undersigned finds Dr. Moneypenny's opinion to be not well-supported, nor consistent with the totality of evidence at the hearing level.

*Id*. at 36–37 (internal citations omitted).

Hinton asserts that the ALJ erred as a matter of law because he failed to evaluate the supportability and consistency of Dr. Moneypenny's medical opinion. (Doc. 9 at 21–25). On January 28, 2017, the Administration promulgated regulations governing how ALJs assess medical-opinion evidence. These rules provide that an ALJ "will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s)." *See* 20 C.F.R. §§ 404.1520c(a)–(c), 416.920c(a)–(c) (2017). Instead, ALJs are required to analyze whether opinion evidence is persuasive, based on: (1) supportability; (2) consistency with the evidence; (3) relationship with the claimant [which includes: (i) length

[6] Dr. Moneypenny passed away between the time he wrote his last report in January 2024 and the January 2025 hearing before the ALJ, and there was some difficulty in obtaining records from his treatment sessions. (Tr. at 48–49, 1404); *see also id*. at 1537 (where psychologist observed, in her note of August 29, 2024 mental-health telephone encounter, that "Veteran's therapist in the community passed").

of treatment relationship; (ii) frequency of examinations; (iii) purpose of the treatment relationship; (iv) extent of the treatment relationship; and (v) examining relationship]; (4) provider specialization; and (5) any other important factors. *See* 20 C.F.R. §§ 404.1520c(c), 416.920c(c). An opinion is "more persuasive if it is supported by explanation and relevant objective medical evidence, and it is consistent with other evidence in record." *Norwood v. Kijakazi*, No. 21-3560, 2022 WL 1740785, *1 (8th Cir. May 31, 2022) (per curiam) (citing 20 C.F.R. §§ 404.1520c(c), 416.920c(c)). An ALJ must give good reasons for his findings about an opinion's persuasiveness. *Phillips v. Saul*, No 1:19-CV-00034-BD, 2020 WL 3451519, *2 (E.D. Ark. June 24, 2020) (citing Revisions to Rules Regarding the Evaluation of Medical Evidence, 82 FR 5844-01, at 5854, 5858 (January 18, 2017), & Articulation Requirements for Medical Opinions and Prior Administrative Medical Findings – Claims filed on or after March 27, 2017, SSA POMS DI 24503.030). The first two factors—supportability and consistency—are the most important, and an ALJ must explain how he evaluated those two factors. 20 C.F.R. §§ 404.1520c(a), 416.920c(a); *Bowers v. Kijakazi*, 40 F.4th 872, 875 (8th Cir. 2022).

Under the revised regulations, a court limits review to whether the ALJ adequately analyzed persuasiveness, including the supportability and consistency factors, not whether the court agrees with the ALJ's evaluation of the record evidence on those issues. *Cropper v. Dudek*, 136 F.4th 809, 814 (8th Cir. 2025) (citations omitted). "This of course includes review of whether the ALJ's reasoning is 'clear enough to allow for appropriate judicial review.'" *Id*. (quoting *Grindley v. Kijakazi*, 9 F.4th 622, 631 (8th Cir. 2021)). "Ultimately, 'an ALJ must comply with the regulations governing how the agency evaluates opinion

evidence,' and a 'failure' to do so is 'legal error.'" *Lewis-Brown v. Bisignano*, No. 3:25-CV-00133-JM-BBM, 2026 WL 1984024, *3 (E.D. Ark. July 9, 2026), *adopted by* 2026 WL 2162425 (E.D. Ark. July 27, 2026) (citing *Martin v. Bisignano*, No. 4:25-CV-000385-JM-BBM, 2026 WL 1625194, *3 (E.D. Ark. June 5, 2026), *adopted by* 2026 WL 1868185 (E.D. Ark. June 29, 2026)); *accord Lucus v. Saul*, 960 F.3d 1066, 1069–70 (8th Cir. 2020); *Taylor v. Bisignano*, No. 4:24-CV-00843-LPR-BBM, 2026 WL 468907, *5 (E.D. Ark. Jan. 13, 2026), *adopted by* 2026 WL 466711 (E.D. Ark. Feb. 18, 2026).

Turning to this case, the ALJ's consistency analysis was summed up in one sentence—"Dr. Moneypenny's opinion [is not] consistent with the totality of evidence at the hearing level." (Tr. at 37). The ALJ made no attempt to explain how Dr. Moneypenny's medical opinion was inconsistent with other evidence in the record, however. For instance, the ALJ did not identify any other evidence in the record or cite any examples "from the totality of the evidence at the hearing level" of what was inconsistent, leaving the Court to speculate as to the basis of the ALJ's inconsistency finding. "[W]hile an ALJ's explanation need not be exhaustive, boilerplate or 'blanket statement[s]' will not do." *Lucas*, 960 F.3d at 1069 (quoting *Walker v. Comm'r, Soc. Sec. Admin.*, 911 F.3d 550, 554 (8th Cir. 2018)); *see also Taylor*, 2026 WL 468907, at *5 ("Although the ALJ used the words 'supported' and 'consistent' in his brief statements about the DDS opinions, it is not enough merely to mention those two prongs. The ALJ must give reasons for his findings[.]"); *Guess v. Kijakazi*, No. 4:20-CV-887-JTR, 2021 WL 5983193, *4 (E.D. Ark. Dec. 17, 2021) (explaining that "an ALJ must address both supportability and consistency with respect to a medical opinion, and he must offer good reasons for his determination. Merely sprinkling

his discussion with those two words does not suffice.”).

In his response, the Commissioner acknowledges that “the ALJ did not into detail” analyzing consistency and cites *Cropper*, 136 F.4th at 815, for the proposition that this Court can look earlier in the ALJ’s decision for evidence inconsistent with Dr. Moneypenny’s opinion. (Doc. 10 at 15–16). However, in *Cropper*, the Court found that the ALJ adequately addressed supportability by discussing, “in detail,” the treatment notes of the medical source at issue, “explaining that those notes included ‘relatively intact mental status examination observations,’ reported Cropper consistently doing ‘alright,’ and highlighted Cropper’s personal activities such as fishing, seeing friends, playing cards, and taking trips.” 136 F.4th at 815. The *Cropper* Court did not hold that an ALJ’s conclusory statement regarding supportability or consistency is sufficient to meet the requirements of 20 C.F.R. §§ 404.1520c(a).

Here, the ALJ’s statement—that Dr. Moneypenny’s opinion is not consistent with the totality of evidence at the hearing level—does not constitute an explanation under the regulations. Said another way, the ALJ’s lack of analysis of the consistency factor frustrates this Court’s ability to review meaningfully whether the ALJ fulfilled the regulatory requirements for evaluating the persuasiveness of the medical opinion. *Lewis-Brown*, 2026 WL 1984024, at *4 (citations omitted); *Martin*, 2026 WL 1625194, at *4 (citation omitted). Because the law requires that the ALJ explain how he evaluated supportability and consistency when assessing medical-opinion evidence, 20 C.F.R. § 404.1520c(a), and the

ALJ failed to do so in this case, the Court must remand.[7] *See Lucas*, 960 F.3d at 1070 ("The failure to comply with SSA regulations is more than a drafting issue, it is legal error. . . . [and] is not harmless.") (citing *Brueggemann v. Barnhart*, 348 F.3d 689, 694 (8th Cir. 2003)).

## IV. CONCLUSION

For the reasons stated above, this Court finds that the Commissioner's decision is not supported by substantial evidence.

IT IS THEREFORE RECOMMENDED THAT:

1. The Commissioner's decision be REVERSED, and the case be REMANDED for further administrative review.
2. Judgment be entered for the Plaintiff.

DATED this 14th day of August, 2026.

Benecia Moore

UNITED STATES MAGISTRATE JUDGE

---

[7] Whether the ALJ erred in analyzing supportability is a closer call. The ALJ found that Dr. Moneypenny's "actual treatment records" would have been more persuasive than records created later and issued as a medical opinion. (Tr. at 37). Notably, supportability means that an opinion is more persuasive when it is supported by relevant objective medical evidence and the explanations of the medical source. 20 C.F.R. § 404.1520c(c)(1). Here, the progress reports Dr. Moneypenny provided were not without supporting explanations—*e.g*, Dr. Moneypenny noted a lack of improvement in Hinton's condition in 2021 and 2024 and explained that Hinton often sat in the parking lot at his workplace trying to stifle his anxiety, left his church and volunteer work at a food pantry because of his suspicions of other people's intentions, largely isolated himself, and moved because of fear of his neighbors. (Tr. at 1404, 1777–78, 1781, 1804). Although an ALJ may certainly consider whether a medical source's own treatment notes support the source's medical opinion, *see Starman v. Kijakazi*, No. 2:20-cv-00035-SRC, 2021 WL 4459729, *4 (E.D. Mo. Sept. 29, 2021) (collecting cases), it is unclear whether an ALJ can find a medical source's opinion unsupported because the treatment records provided were periodic progress reports instead of contemporaneous treatment notes. Nevertheless, this Court need not grapple with the issue, because the ALJ in this case failed to conduct a proper consistency analysis, requiring remand. *See Bonnett v. Kijakazi*, 859 F. App'x 19, 20 (8th Cir. 2021) (per curiam) (failure to address either the consistency or supportability factor in assessing the persuasiveness of a medical opinion requires reversal) (citing *Lucus*, 960 F.3d at 1069–70).